[L. A. No. 1589. In Bank.—January 13, 1908.]

JENNIE R. SCOTT, et al., Respondents, v. SAN BER-
NARDINO VALLEY TRACTION COMPANY, Ap-
pellant.

Negligence How Determined—Circumstances to be Considered—Con-
duct of Person of Ordinary Prudence.—The question whether or
not upon a given occasion the conduct of a person is negligent, is.
always comparative and relative. The conduct must be compared
to that of an assumed person of ordinary prudence, and must be
considered with relation to all the circumstances attending the occa-
sion which might reasonably be taken into consideration by a person
of ordinary prudence in determining what his conduct should be.
The circumstances to be considered are those which the evidence
shows may reasonably be supposed to have been known to such
person and to have influenced his mind and actions at the time.
These are not, necessarily, the circumstances which afterwards, in
the light of the event, it can be seen should have been known to
him and should have influenced his conduct, nor is his wisdom in
determining what to do to be judged by the event.

Id.—Question of Fact for Jury.—In general, negligence is a question
of fact for the jury, and the law has fixed no exact standard of
care other than the general one that it must be such as a reason-
ably prudent man would exercise in the particular circumstances.
Hence in ordinary cases, it is peculiarly a question for the jury or
court trying the cause to decide as a matter of fact, whether or
not the person was culpably negligent.

Id.—Street-Railways—Use of Streets—Duty of Users of Streets.—
One walking or driving in a public street is bound to use reason-
able care to look and listen as he goes, so as to avoid collisions with
others exercising the common privilege of using the street. This.
duty is not confined to persons driving upon, or about to drive upon,
a street-car track. It rests alike upon every person while in a public
street, and is as obligatory upon the motorman propelling a car as.
upon the footman, horseman, or driver. A street-car cannot go on
the street except upon its rails, and hence it has the better right.
to that space, to which others must yield when necessary, but other-
wise its rights are not superior to that of any other person who has.
occasion to use the street.

Id.—Crossing Street-Car Tracks—Duty of Railroad.—A foot pas-
senger or driver of a horse, about to cross a public street along
which street-cars run, has a right to expect that those in charge
of the street-cars will operate them in the manner and run them at
the speed which is customary at the particular place, and that they
will give the usual warnings and signals, and take the usual pre--

caution to avoid injury to others; and the reasonableness of the care exercised by the person so crossing must be measured by all such conditions, rights, and circumstances. Under the circumstances of the present case, the reasonableness of the care exercised by the plaintiffs in driving across the street in front of the defendant's car, was a question for the jury, and its verdict for the plaintiffs, based upon the defendant's negligence in the operation of its car, is held supported by the evidence.

ID.—CROSSING STREET IN FRONT OF CAR—CONTRIBUTORY NEGLIGENCE.— One about to drive across a comparatively crowded street of a city cannot be held guilty of negligence, as matter of law, in starting to drive across the street in front of a street-car which he saw standing, and about to start, at a distance of about fifty-nine feet from the point where he must cross the track.

ID.—PRESUMPTIONS IN SUPPORT OF VERDICT.—Conceding that the failure of the driver to observe the car standing ready to start, was negligence, still the jury might have found that, even if he had seen the car, it was not negligence for him to attempt to cross in front of it, and that his negligent failure to perceive it did not contribute to the injury; and in support of a verdict for such driver, it will be assumed on appeal, that the jury took that view.

ID.—FAILURE OF DRIVER TO LOOK.—The question, whether or not the driver, in turning his buggy while crossing the track, exercised ordinary prudence in failing to lean forward and look towards the car to see if it was approaching before he was so far turned as to be able to see it from his position in the buggy, was for the jury to decide.

ID.—INSTRUCTIONS—HARMLESS REFUSAL TO GIVE.—The refusal to give instructions at the request of the defendant, as to a matter concerning which the jury specially found in favor of the defendant, is harmless.

ID.—APPLIANCES FOR PREVENTING COLLISIONS.—In an action against a street-railway company, to recover damages for personal injuries resulting from a collision, where the court, at the request of the defendants, instructs the jury that "if they found from the evidence that defendant's employees in charge of the car at the time of the collision, as soon as they discovered the dangerous position of plaintiffs, used ordinary care to prevent the collision, the defendant would not be liable for the result of any collision which might have been prevented if such employees had been possessed at that time of other appliances for preventing the collision which they did not possess," it was not error for the court to add, of its own motion, the following, "Unless a mere running of the car without having it provided with such additional appliances, if there were any, would in itself have amounted to wanton and reckless conduct, on the part of the defendant."

ID.—MEASURE OF DAMAGES—DAMAGES LIMITED BY FACTS IN EVIDENCE.— In such an action, where the jury were several times instructed to

the effect that in the event they found for the plaintiff, the amount of their verdict must be based on the facts and circumstances in evidence, a further instruction that the verdict could not exceed a stated amount, which was the aggregate amount prayed for in the complaint, including a sum for expenses concerning which no evidence was offered, is without injury to the defendant, and will be considered as having been disregarded by the jury, when their verdict for the plaintiff was for an amount far less than the amount claimed for the personal injury.

APPEAL from a judgment of the Superior Court of San Bernardino County.   Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

F. A. Leonard, E. R. Annable, Goodcell & Leonard, and Byron Waters, for Appellant.

Prescott & Morris, for Respondents.

SHAW, J.—This is an action by husband and wife to recover damages sustained by the wife for personal injuries alleged to have been caused by the negligence of the defendant. Plaintiffs recovered and the defendant appealed from the judgment within sixty days after its rendition.   A bill of exceptions sets forth the evidence.

A street-car operated by defendant collided with a buggy in which the plaintiffs were driving, whereby the plaintiff, Jennie R. Scott, was thrown out and injured.   It is contended that the plaintiff, George H. Scott, was negligent in driving upon and across the track in front of the car, and that this negligence contributed to the injury.

In considering this proposition, it is necessary always to bear in mind that the jury has found to the contrary.   In this case it not only returned a general verdict to that effect, but, in answer to a specific question, it declared that George H. Scott did not negligently drive upon the track.   If there was any substantial evidence in support of this fact the verdict must stand although the preponderance of the evidence may be against it.   The question whether or not upon a given occasion the conduct of a person is negligent is always comparative and relative.   The conduct must be compared to that of an assumed person of ordinary prudence and must be considered

with relation to all the circumstances attending the occasion which might reasonably be taken into consideration by a person of ordinary prudence in determining what his conduct should be. The circumstances to be considered are those which the evidence shows may reasonably be supposed to have been known to such person and to have influenced his mind and actions at the time. These are not, necessarily, the circumstances which afterwards, in the light of the event, it can be seen should have been known to him and should have influenced his conduct. Nor is his wisdom in determining what to do to be judged by the event. We must, as nearly as possible, put ourselves in his place, he being compelled to act without foreknowledge and with only ordinary prudence and wisdom to guide him. In some particular cases of frequent occurrence it has been established by a long course of judicial decision that certain precautions are presumptively necessary to constitute due care and that, if one of these precautions is omitted, negligence will be presumed, as matter of law. For example, one who, in traveling a public road, crosses the track of an ordinary steam railroad, must before going upon the track, look and listen for an approaching train, and must generally stop for that purpose. If it does not appear that he did these things he will be considered guilty of negligence unless he shows some extraordinary and unusual conditions which rendered it unnecessary. But, in general, negligence is a question of fact for the jury, and the law has fixed no exact standard of care other than the general one that it must be such as a reasonably prudent man would exercise in the particular circumstances. Hence in ordinary cases it is peculiarly a question for the jury or court trying the cause to decide as a matter of fact whether or not the person was culpably negligent. Judged by these rules, we think the verdict in this case is supported by sufficient evidence.

The collision occurred on Orange Street in the city of Redlands, at a point about ninety-eight feet south of the south intersecting line of State Street. Scott and his wife drove up Orange Street from the north and stopped in front of a store on the west side of that street at a point almost directly opposite where the collision took place, where, leaving the buggy and horse by the curb facing south, in care of his wife, Scott went into a hat store, one door further south than the buggy,

to make a purchase. Upon coming out he got into the buggy and drove off. He wished to go north on that street and in order to do so it was necessary for him to cross to the other side of the street, turning his horse and buggy around in the operation so as to face them north. Accordingly, he started to drive in a course curving to the east and north and crossing the car track so as to bring his horse to the east side of the street and east of the car track with its head to the north. He got the horse and all of the buggy, except the left hind wheel, across the track, when the defendant's car, which was going south, struck that wheel with such force that it was broken to pieces and the plaintiff, Jennie R. Scott, was thrown out and severely injured.

The buggy had immovable side curtains so placed that the driver, while in the usual position, could not readily look to the rear. While Scott was in the hat store the car in question had come from the north and had stopped at the corner on Orange Street south of State Street. As Scott came out of the store and walked northerly to his buggy the car was standing at the corner in plain sight and in line with his buggy. He looked both ways as he got into the buggy. The evidence is not clear on this point, but the jury may justly have inferred the fact. However, he did not observe the car, and it must be conceded that he did not look with care. There is a conflict of evidence upon the question whether the car had started south or was standing motionless at the corner at the time he made this observation, got into the buggy and started to make the turn to the north. Gaylord testified that he was standing on the east side of Orange Street to the north and rear of the car, that when he first noticed it the car was just a trifle from the corner of State Street in motion, going south; that he next observed a horse coming across the track to the south of the car, with a buggy attached, that the car was then about two car lengths (seventy-eight feet) from the horse, and could not have more than started from the corner. If this was true, the car must have been standing still when the horse started. Meek, who was on the car, testified that the car was standing at the corner when the buggy started. Smith, for the defense, testified that the car was just starting in motion as he saw Scott start across the track, which, of course, was some seconds after Scott started from the side of the

street, if the witness is to be taken literally. Some of the statements of these witnesses on cross-examination might be construed to be inconsistent with this testimony, but the apparent inconsistency may easily be reconciled. There was other evidence indicating that the car started before Scott did, but, as we must view the case, the fact was established that he started while the car was standing still upon the track, with the front end fifty-nine feet from the point where he must cross the track. He did not observe the car when he started, but as he would have seen it if he had looked attentively, his conduct must be judged as if he had seen it there standing and had then started to cross in front of it. The evidence further shows that he listened attentively while crossing the track and heard no gong or sound of car wheels, that he was slightly dull of hearing, but not hard of hearing, that he could not see far toward the rear of the buggy from his position in the buggy, that when he got on the track he had turned sufficiently to see down the street a little farther in the direction from which the car was coming, but saw no car approaching, that he first saw the car after his horse was across the track and had turned to the north and while his hind wheel was still on the track. The car was then some ten or twelve feet away, and he urged his horse ahead to get the buggy out of the way of the car and thought he was going to get clear. As it was, the car barely caught the hind wheel. The car did not slacken its speed until it struck the wheel or until it was within five or six feet of it. The evidence shows that the motorman did not see the buggy nor make any effort to stop the car until his attention was called to it by others in the car about the time it struck the buggy, and that he then stopped it within a distance variously estimated at from six to fifteen feet. The car was then going up a slight ascending grade at the speed of four miles an hour, according to the estimate of most of the witnesses. There was evidence of actual observation, showing that the cars, when running at practically the same speed, covered the distance of fifty-nine feet from the place of starting to the point of collision in six seconds, actual time, or at an average speed of six and seven-tenths miles an hour. This would be fully as satisfactory as estimates of eye witnesses. As it was at rest at the beginning, it might be inferred from this that the speed gradually in-

CLII Cal.—39

creased from nothing at the start to a rate much faster than the average speed, and that it was going at this rapid rate when the collision occurred. It was upon the busiest street in Redlands and at the busiest time of the day. Other teams were on the street in that block at the time and another car was standing at the next corner to the south. It was customary at that time of day for cars going south on Orange Street to stop on the south side of State Street to let off passengers. Some teams standing on the east side of Orange Street prevented plaintiff from going straight across the track, compelling him to turn in closer to the rails than he otherwise would.

It is the law that one walking or driving in a public street is bound to use reasonable care to look and listen as he goes, so as to be able to avoid collisions with others exercising the common privilege of using the street. This duty is not confined to persons driving or about to drive upon a street-car track. It rests alike upon every person while in a public street. It is as obligatory upon the motorman propelling a car as upon the footman, horseman, and driver. In determining whether or not he will cross such a street at any given time and place, one may, and often must, act upon the theory that he has an equal right with others, and upon the belief and expectation that others as well as himself will use the reasonable care that the situation requires, and that while he is necessarily looking out ahead to avoid running down any person on the street and to guide himself or his team, others approaching him from the side will in like manner look out ahead and avoid a collision with him. A street-car cannot go on the street except upon its rails and hence it has the better right to that space, to which others must yield when necessary, but otherwise its rights are not superior to that of any other person who has occasion to use the street. (*Shea* v. *Potrero etc. Co.,* 44 Cal. 414; *Clark* v. *Bennett,* 123 Cal. 280, [55 Pac. 908].) The reasonable care which is required must be measured by all these conditions, rights, and circumstances. The foot passenger or driver of a horse has a right to expect that those in charge of street-cars will operate them in the manner and run them at the speed which is customary at the particular place, and that they will give the usual warnings and signals, and take the usual precautions to avoid injury to others.

(*Orcutt* v. *Pacific C. R. Co.*, 85 Cal. 299, [24 Pac. 661] ; *Driscoll* v. *Cable R. R. Co.*, 97 Cal. 553, [33 Am. St. Rep. 203, 32 Pac. 591].)   In a crowded street it is often necessary and not inconsistent with reasonable prudence for a person to cross the street in front of street-cars, in motion or at rest, at a point so near that it would be *prima facie* an act of negligence, if attempted at another place where the streets are less crowded and the cars usually run faster.   The rights and obligations of all persons using a public street are, in this respect, reciprocal.   Each may rightfully expect that the other will, at the proper time, discharge his proper duty toward others.   He cannot rely wholly on the care of others, nor, on that account, neglect to use the precautions which the particular situation demands of him.   But he frequently must, to some extent, depend on others in such situations, and his conduct must be considered in view of that fact in determining whether or not it is negligent.   His care, or want of care, in such cases is generally a matter to be determined by the jury from all the circumstances surrounding him at the time.   (*Clark* v. *Bennett*, 123 Cal. 277, [55 Pac. 908].)

Assuming, therefore, that George H. Scott did see the car standing at the corner of State Street, and apparently about to start south, and that he thereupon started to drive across the street to turn northward, as he did, we cannot say, as a matter of law, that it was a negligent act.   People do the same thing every day under similar conditions in every city. It cannot be said that an act which the majority of men would do in the existing circumstances and which we may presume is usually done in safety, is negligence, *per se.*   "It falls within the province of the jury, not only to determine the facts constituting negligence, but also the question as to what would be the conduct of a person of ordinary prudence, under similar circumstances, which, commonly, is a question of fact, not of law.   In general, all these questions are for the jury, whose verdict in favor of the plaintiff must be regarded as conclusive, unless the validity of the defense, both as to the existence of the negligence and its effect as contributing proximately to the injury, follows necessarily from the undisputed facts."   (*Schneider* v. *Market St. Ry. Co.*, 134 Cal. 488, [66 Pac. 734].)   "It cannot be said that a person is guilty of contributory negligence merely because

he attempts to cross a street-railway when a car is approaching. If that were so, he could never attempt to cross such a track in the crowded parts of a city where there is practically always an approaching car; and in such case, as street-cars go at a comparatively low rate of speed and are quickly stopped, the question of negligence would depend on the proximity or remoteness of the car, and upon all the other circumstances surrounding the occurrence. In such a situation the traveler cannot be held to exercise the very highest prudence and judgment; it is sufficient if he exercises that degree of care and prudence and good sense which men who possess those qualities in an ordinary or average degree exercise.'' (*Clark* v. *Bennett,* 123 Cal. 278, [55 Pac. 908].)

It may be conceded that the failure of Scott to observe the car standing at the corner ready to start at the time he started to make the turn, was negligence. But the jury would have been justified in finding that, even if he had seen the car, it was not negligence for him to attempt to cross in front of it, and they may rightly have concluded that his negligent failure to perceive it did not contribute to the injury. Their verdict compels us to assume that they took that view. A negligent act or omission ''must have contributed directly to the injury, or, however improper or illegal it may have been in the abstract, no action or damages can be founded upon it.'' (*McKune* v. *Santa Clara etc. Co.,* 110 Cal. 486, [42 Pac. 980].)

With respect to his failure after he got upon the track to lean forward and look toward the car to see if it was approaching before he was so far turned as to be able to see it from his position in the buggy, we are of the opinion that the question whether or not he exercised ordinary prudence was also for the jury to decide. The car, according to its custom, would not be going at full speed at that point. It was on an ascending grade equipped with air-brakes and could be quickly stopped. It was the motorman's duty to keep watch ahead of his car for vehicles, and it is to be presumed that he usually did his duty in that respect. Scott found other teams obstructing his course and requiring his attention to avoid them. It is not clear from the evidence, that, even if he had looked when upon the track and had seen the car approaching, he would or should have anticipated the

acceleration of its speed which the evidence indicates may have been given to it, or the culpable carelessness of the motorman in running the car at that speed in such a place without looking ahead, or that, from all the circumstances, as then presented to his mind, reasonable prudence would have required greater effort in urging his horse forward, or a change in its course. He cannot be charged with negligence *per se*, under all the circumstances, unless we are prepared to say that, in the crowded streets of a city one who presumes to drive in front of a street-car just starting from a corner is guilty of negligence in law if he does not expect and use due care to guard against the gross and culpable negligence of a motorman in propelling his car along the street in utter disregard of the safety of others. We should have to license those in charge of the cars at such places to act with the utmost recklessness, to the end that the travelers who failed to anticipate and avoid the danger therefrom, could be charged with contributory negligence and the company thereby escape liability. The greater their negligence the better their defense. Whatever the rule may be with regard to the right of travelers at steam-railroad crossings, reason and authority require that, in the crowded streets of a city where their rights are equal, the rule should be that a traveler has the right to assume, until his senses, exercised with reasonable diligence inform him to the contrary, that the persons operating street-cars will use ordinary care, give the usual signals, and keep the usual lookout ahead. (*Driscoll* v. *Cable R. R. Co.*, 97 Cal. 567, [33 Am. St. Rep. 203, 32 Pac. 591]; *Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal. 328; Shearman and R. on Negligence, sec. 31.)

It is unnecessary to discuss at length the question of the sufficiency of the evidence to prove the negligence of the motorman. Out of his own mouth he stands convicted. Conceding that the actions of the horses standing in front of the store at his left attracted his attention in that direction, it did not justify him in proceeding blindly up the street without looking ahead or slackening his speed.

In response to an interrogatory the jury found specially that the motorman, after he discovered the dangerous position of plaintiffs, used ordinary care with the appliances under his control, to prevent the collision. As this issue was deter-

mined in favor of the defendant it is unnecessary to consider the refusal of the court to give instructions relating to the conduct of the motorman at that time. Such ruling must necessarily have been harmless in view of the instructions given.

The defendant asked the following instruction: "If the jury find from the evidence that defendant's employees in charge of the car at the time of the collision, as soon as they discovered the dangerous position of plaintiffs, used ordinary care to prevent the collision, the defendant would not be liable for the result of any collision which might have been prevented if such employees had been possessed at that time of other appliances for preventing the collision which they did not possess." The court gave it, but added the following: "Unless a mere running of the car without having it provided with such additional appliances, if there were any, would in itself have amounted to wanton and reckless conduct, on the part of the defendant." We do not think there was any error in this of which the defendant can complain.

The complaint alleged that the plaintiffs had suffered damage to the amount of fourteen thousand dollars by reason of the injuries to Mrs. Scott, and to the extent of one thousand dollars by reason of expenses in curing her hurts. There was no evidence of any expense. The answer denied that plaintiffs had, by reason of the collision, sustained any damage in excess of one thousand dollars. The verdict fixed the damages at fifteen hundred dollars. The court instructed the jury that if they found for the plaintiffs the verdict should be "in such sum as damages, not exceeding the sum of $15,000 asked for in the complaint, as may have been sustained by them on account of said collision." The defendant urges this as a prejudicial error, as from the evidence the plaintiffs were not entitled to more than fourteen thousand dollars. The jury, in other instructions, were directed to estimate the damages "from the facts and circumstances in evidence," that in determining the amount "they should take into consideration all the facts and evidence before them," and that if they found for the plaintiffs "the plaintiffs are entitled to recover from the defendant such damages as you may find from the evidence" plaintiffs have sustained by reason of the accident. It is clear that the jury must have understood that

they were not authorized to give damages for expenses which were alleged but not proven, and, hence, they must have entirely disregarded the claim for expenses. And as the verdict was much less than the fourteen thousand dollars claimed for the personal injury to Mrs. Scott, it is plain that the error in stating it as fifteen thousand dollars did not injure defendant.

There are no other points of sufficient importance to require notice.

The judgment is affirmed.

Angellotti, J., Beatty, C. J., and Sloss, J., concurred.

Rehearing denied.