[Civ. No. 6088. Fourth Dist. Mar. 23, 1961.]

WILBUR JOHNSTON, Appellant, v. PAUL BROTHER,
Respondent.

George W. Hauer, Janjigian & Mardikian and James C. Janjigian for Appellant.

Peart, Baraty & Hassard, Alan L. Bonnington, Ricky J. Curotto, Avery, Meux & Gallagher and John J. Gallagher for Respondent.

SHEPARD, J.—This in an appeal by plaintiff from a judgment for defendant in an action for damages for alleged malpractice.

The gravamen of plaintiff's complaint lies in his allegation that on or about June 29, 1957, he employed defendant to treat him for an illness and that on said date defendant so carelessly and negligently administered treatment as to cause serious illness and permanent injury to plaintiff. In general essence, this is repeated in the pretrial statement of facts submitted by him to the trial court. In his opening statement to the court and jury, plaintiff's attorney again made clear that the negligence complained of was the injection of penicillin on Saturday morning, June 29, 1957, without obtaining adequate history, and that the penicillin caused illness and permanent impairment of health, of which plaintiff complains.

The pertinent facts, in general substance, are as follows: Plaintiff had already been under treatment by defendant for some weeks on account of a genito-urinary infection with use of sulfa, streptomycin and prostatic massage as treatment, when, on June 29, 1957, he appeared at defendant's office in the morning with inflamed throat and eyes. Defendant diagnosed plaintiff's malady as acute pharyngitis and acute conjunctivitis. Believing the cause to be some form of pathogenic streptococci, defendant asked plaintiff if he was allergic to penicillin. Plaintiff answered that he didn't know if he had ever had any penicillin, and may also have stated that his children did have such allergy. Thereupon, defendant injected intravenously a treatment of Bicillin (a pharmaceutical trade name for a preparation of penicillin). That afternoon plaintiff experienced some itching and discomfort. Sunday his condition became worse, with swelling about the face. Monday he was hospitalized in serious condition. He went through a critical stage and finally recovered, but suffered loss of the sight of one eye and serious impairment of vision of the other.

There was no essential conflict on the fact of plaintiff's illness following June 29, 1957. During the trial the "condition about which he complained" was repeatedly identified as the illness and permanent disability which occurred following June 29. Thus, the basic contest throughout the entire pleading, pretrial and trial stages of the case revolved around the dispute as to whether or not the penicillin treatment was the cause of the illness which occurred after June 29, 1957,

and, if it was, whether or not defendant's preparatory inquiry as to plaintiff's history of allergy and defendant's use of penicillin under the circumstances reasonably conformed to the standards of diagnosis and treatment ordinarily practiced by reputable physicians in good standing in the community of Fresno at that time.

Defendant produced substantial evidence that at the time the criticised treatment given on June 29, 1957, was administered, plaintiff was already suffering from erythema multiforme bullosa, sometimes called Stevens-Johnson syndrome; that this malady was the real cause of the illness and disability complained of by plaintiff; that the penicillin treatment did not cause or contribute thereto; that this malady named Stevens-Johnson syndrome was, on June 29, 1957, in the prodromal or preliminary stage and could not then be diagnosed; that the preliminary inquiry relating to possible allergy and the response thereto complied with standard practice of physicians in good standing in the community of Fresno at that time as the basis for administering penicillin treatment under the diagnosis arrived at; that for streptococci infection of the kind here diagnosed reputable physicians of Fresno generally use penicillin as the preferred treatment; that the diagnosis and treatment given by defendant conformed to ordinary standards of care used by physicians in good standing in the Fresno community at that time. Plaintiff produced evidence in conflict therewith. The jury returned a verdict for defendant. A motion for a new trial was made and denied, and plaintiff appeals.

Plaintiff's points on appeal are confined entirely to criticism of the instructions which relate to defendant's duties as a physician and how negligence is to be measured. In discussing these criticisms, it appears necessary to quote all of the instructions thus involved. (Note 1.) No other instructions

---

Note 1: Instructions to jury (italics ours):

1. "... In this case a conflict exists in the testimony of expert witnesses on the question of whether or not the condition for which the plaintiff was hospitalized on July 1, 1957, and his present condition was proximately caused by the injection of bicillin received by the plaintiff from the defendant on June 29, 1957. You must resolve that conflict. ...

2. "You are instructed that plaintiff's complaint is for alleged malpractice; or, in other words, is predicated upon a claim of want of skill or negligence upon the part of the defendant. Before the plaintiff can recover in such an action against the defendant, it must be proven to you by a preponderance of the evidence that the defendant in the care and treatment of the Plaintiff Wilbur Johnston, either did some particular thing or things that physicians of ordinary skill, care and diligence

are criticised. The jury was properly warned, near the commencement of the instructions, that they must not select a single instruction or portion thereof and base a verdict thereon, but must consider all of the instructions together.

engaged in the same kind of work or specialty would not have done under like or similar conditions or circumstances; or that the defendant did some particular thing or things in a manner that such physicians of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances; or that the defendant failed or omitted to do some particular thing or things that such physicians of ordinary skill, care and diligence practicing in the same community or vicinity would have done under the same or similar circumstances. . . .

3. ''In relation to services rendered to, or treatment, or care of, a patient by a doctor, negligence is the omission to do something which would have been done under the same or substantially similar circumstances by a reasonably learned, skillful, careful, diligent and prudent doctor *in good standing* in like line of practice, and rendering like service in the same or similar locality, or the doing of something, which, according to such prevailing standards, a reasonably learned, skillful, careful, diligent and prudent doctor would not have done in rendering like service under the same or substantially similar circumstances.

4. ''You are instructed that ordinary care means that degree of care which an ordinarily careful and prudent person would have exercised under the same or similar circumstances. Ordinary care as applied to a physician in the practice of his profession means such care as physicians practicing in the same community and possessing the average skill of physicians practicing in such community or a similar community would exercise under the same or similar circumstances.

5. ''Under the law of negligence, the physician whose conduct we set up as a standard is not the extraordinarily cautious physician nor the exceptionally skillful one, but a physician of reasonable and ordinary prudence; and if the defendant complied with that standard of care, he was not negligent in this case. Even though a physician may be guilty of negligence, still he is not liable in civil damages unless that negligence was a proximate cause of an injury. . . .

6. ''If you believe from the evidence that the conditions and things of which the plaintiff complains were caused or occasioned by or from any cause or causes over which the defendant had not control, or for which he was not responsible, then in that event your verdict must be in defendant's favor. If you believe that it cannot be determined from a preponderance of the evidence or by a preponderance of the evidence whether the conditions of which plaintiff Wilbur Johnston complains, or any of them, were or were not caused by any act of omission or commission of the defendant, or by anything over which he had no control, then, in that event, your verdict must be in favor of the defendant, as you are not allowed to conjecture or speculate as to the cause of the injuries, if any, in this case.

7. ''By undertaking professional service to a patient, a physician and surgeon impliedly represents that he possesses, and it is his duty to possess, that degree of learning and skill ordinarily possessed by physicians and surgeons *of good standing*, practicing in the same locality under similar circumstances.

8. ''It is his further duty to use the care ordinarily exercised in like cases by *reputable* members of his profession practicing in the same locality under similar circumstances; and to use reasonable diligence and his best judgment in the exercise of his skill and the application of his learning, in an effort to accomplish the purpose for which he is

## PHYSICIANS IN GOOD STANDING

■■■■ Plaintiff first complains that some of the instructions do not include, in describing "ordinary care," the terminology "in good standing," and in one place uses the word "average"; that such failure to include in each of such instructions said phrase "in good standing" misled the jury and was prejudicial error. Plaintiff does not quote the instruction and his transcript reference appears to be in error. From a review of the briefs, however, we are satisfied that he refers to Number 4 in Note 1. (For clarity in reference here, we have assigned our own numbers.)

In considering this contention, we must bear in mind that, as the jury was properly instructed, all the instructions given

---

employed. A violation of any of those duties is a form of negligence that we call malpractice.

"If you should find that a defendant or that defendant failed in any of the duties I have mentioned, and that such failure was a proximate cause of injury to the plaintiff, then your verdict must be in plaintiff's favor as against said defendant.

9. "In determining whether the defendant's learning, skill and conduct fulfilled the duties imposed on him by law, as they have been stated to you, you are not permitted to set up arbitrarily a standard of your own. The standard, I remind you, was set by the learning, skill and care ordinarily possessed and practiced by others of the same profession *in good standing,* in the same locality and under similar circumstances, and at the same time. . . .

10. "Where, under the usual practice of the profession, different courses of treatment or procedure may properly and reasonably be applied, a physician has a right to use his best judgment as to the manner and means of treatment and procedure, and he will not be liable in an action for malpractice, so long as his conduct is not inconsistent with ordinary skill and care under the circumstances, though there were other suitable remedies or systems in treating the injury or disease more beneficial than the one adopted. . . .

11. "If a physician and surgeon does not possess that degree of learning and skill required of him by the law, or if he fails to exercise the care required of him, it is no defense to a charge of negligence that he did the best he could.

12. "To aid you in finding on the issue whether the defendant is guilty of malpractice, you should have in mind a few discriminations. Where there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all practitioners *of good standing,* it is not negligence for a physician if, in exercising his best judgment, he selects one of the approved methods, which later turns out to be a wrong selection, or one not favored by certain other practitioners. . . .

13. "While a doctor is not liable for injury caused by mere error in judgment on his part, yet, if such injury is caused by any failure on the part of the doctor to use and exercise that degree of care and skill that was ordinarily possessed and exercised by physicians, practicing in the locality, where he practiced at that time, or in similar localities, he is liable for such injury. . . ."

must be considered together and as a whole. Semantic analysis of a single line, sentence or instruction without regard to the whole charge can only result in misleading distortion. ■ As was said in *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 519 [6] [203 P.2d 522]:

"In determining the propriety of an instruction the reviewing court should examine the charge as a whole. [Citations.] If when considered together the instructions are found generally to state the applicable law, reversible error is not necessarily present even though an isolated instruction is defective in not containing all of the essential elements."

See also *Scarano* v. *Schnoor*, 158 Cal.App.2d 612, 617-619 [3-4] [323 P.2d 178, 68 A.L.R.2d 416]; *Ballard* v. *Augustine*, 171 Cal.App.2d 206, 212 [6] [339 P.2d 859].

■ Viewing the instructions as a whole, we find that instruction numbered 3, which immediately preceded the instruction complained of, did use the terminology "in good standing." Instruction numbered 5, immediately following, used the terminology "a physician of reasonable and ordinary prudence"; instruction numbered 7 used the terminology "in good standing"; instruction numbered 8 used the terminology "reputable members of his profession"; instruction numbered 9 specifically and especially warned the jury that the standard of care is set by the skill of others of the same profession "in good standing"; instruction numbered 12 used the terminology "in good standing."

Reading the instructions as a whole, we are convinced that the jury could not reasonably have misunderstood the standard of care to be applied. Nothing said in any of the cases cited by plaintiff is contrary to this conclusion. *Houghton* v. *Dickson*, 29 Cal.App. 321 [155 P. 128], and *Say* v. *Barber*, 202 Cal. 679 [262 P. 312], simply give the general rules governing this class of case. *Sim* v. *Weeks*, 7 Cal.App.2d 28 [45 P.2d 350], disapproves the insistence of defendant therein on the use of the word "average" in a single instruction, but does not discuss the whole charge to the jury. *Sansom* v. *Ross-Loos Medical Group*, 57 Cal.App.2d 549 [134 P.2d 927], affirmed a judgment for plaintiff in that case but does not discuss the charge as a whole. The Scarano case, as we have already pointed out, discusses the whole charge and arrives at the exact conclusion that we have here arrived at.

We find no prejudicial error.

DUTY, NEGLIGENCE AND BURDEN OF PROOF

■ Plaintiff next contends that instruction numbered 5

below, prejudicially misled the jury because it omitted the factor of the physician's requisite skill and the application thereof. In the first place, the instruction does, in fact, refer to the application of the ordinary physician's skill. However, the primary fault in plaintiff's approach, again, lies in the same field we have already discussed. A single instruction is only one part of the whole explanation being given to the jury. No one word, line, sentence or paragraph can possibly inform the jury of the rules they need to know. The instruction is not contradictory, but simply incomplete. It would, of course, be desirable to have all elements of each phase of a case repeated in each instruction, but such a course would be entirely impracticable for the instructions would then become so lengthy that no jury's attention could ever be retained. Here, in the context and purpose for which it is used, we consider the instruction not improper, although if used without other instructions it would have been of little value. Here, the elements claimed to have been omitted were contained in other instructions in such a way as to harmoniously and without contradiction give the jury a clear picture of the basic standard of care and its application to the facts of the case.

 Actionable negligence charged against a physician simply consists in his doing something which he should not have done, or in failing to do something which he should have done. (*Perkins* v. *Trueblood,* 180 Cal. 437, 443 [3] [181 P. 642]; *Langford* v. *Kosterlitz,* 107 Cal.App. 175, 182 [2] [290 P. 80].)

We find no prejudicial error here.

## WOULD AND SHOULD

 Next, plaintiff complains that the word "would" as used several places in the instructions, confused and misled the jury. First, it must be noted that instruction numbered 3, given at plaintiff's request, uses the identical terminology in the same connotation: viz., in describing the standard set by what other reasonably skillful and prudent physicians in good standing in the same locality "would" do. This informed the court that plaintiff considered the terminology proper. He cannot now complain, for he invited the error by his own instruction. (*Zuckerman* v. *Underwriters at Lloyd's, London,* 42 Cal.2d 460, 470 [2] [267 P.2d 777]; *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 657 [4] [320 P.2d 500]; *Schmidt* v. *Macco Constr. Co.,* 119 Cal.App.2d 717, 735 [25] [260

472

P.2d 230]; *Korakakis* v. *Freeman*, 178 Cal.App.2d 331, 337 [6] [2 Cal.Rptr. 802].)

More important, however, is the fact that the word "would" is not directly applied to defendant's actions. On the contrary, it is used in defining that duty through relativity to the standard of care in use by reputable physicians of the community generally. We are, of course, concerned with the degree of care defendant "should" exercise, but what sets that standard of care is what other reputable and prudent physicians of the same community do exercise. The word "should," as applied to the other members of the profession generally, would be incorrect, for we all know that if everyone exercised the degree of care they "should" exercise, there would be no accidents on the highways nor in connection with other matters in which human beings at times make errors. But that is not the standard set by the law. As was said in *Ales* v. *Ryan*, 8 Cal.2d 82, 107 [19] [64 P.2d 409]:

"The care to be exercised is not mere ordinary care, but it is relative to the *care ordinarily exercised* by surgeons in performing the particular operation."

The word "would" as the past tense of "will" is a word of will to action. In its connotation as used here, it is so nearly identical with the term "ordinarily exercised" that we cannot believe the jury could, in listening, split hairs so closely as to misunderstand the true meaning of the court. The jury was clearly instructed (instruction numbered 8) that "It is his further duty to use the care ordinarily exercised in like cases by reputable members of his profession practicing in the same locality under similar circumstances," and, again (instruction numbered 9), "The standard, I remind you, was set by the learning, skill and care ordinarily possessed and practiced by others of the same profession in good standing" etc. In numerous other places in the instructions the standard presented is that of how other reputable members of the profession, in the exercise of reasonable prudence and care, do act.

The terminology complained of has been approved and used in fixing the standard of care in negligence cases innumerable times by both our Supreme and appellate courts, and by text writers, generally. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 102, 116 [8] [251 P.2d 955]; *Richardson* v. *Kier*, 34 Cal. 63, 75 [3] [91 Am.Dec. 681]; *Weber* v. *Pinyan*, 9 Cal.2d 226, 230 [3] [70 P.2d 183, 112

A.L.R. 407]; 35 Cal.Jur.2d 705 [187]; 65 C.J.S. 389 [b-1]; *Rangel* v. *Badolato,* 133 Cal.App.2d 254, 259 [1] [284 P.2d 138].)

We find no prejudicial error in the terminology used.

### PREEXISTING ILLNESS

▆▆▆ Next, plaintiff contends that instruction numbered 6, below, is prejudicially confusing and misleading. The essence of this complaint lies in his assertion that the instruction tells the jury that defendant would not be liable even though defendant's treatment negligently caused or contributed to the illness complained of. Of course, if the instruction said that, it would, indeed, be prejudicially erroneous. But we do not so read it, nor do we think that, fairly read, it can be so construed.

All through the pleading, preparatory stages and the trial, it was clear that the ''condition or things of which plaintiff complains'' was the illness and permanent impairment of health occurring after June 29, 1957. The instruction could have been understood to allude only to that. Defendant's responsibility had been clearly defined, as we have hereinbefore pointed out. Necessarily, the instruction means that if the illness occurring after June 29 was caused by something defendant had no responsibility for, either in commission or omission, there is no liability. In other words, the jury was told that even if they found there was negligent treatment, nevertheless, if the illness complained of would have occurred in spite of such negligent treatment, or if the treatment was not negligent, then in either event there would be no recovery.

Properly read, we cannot conceive its meaning to be otherwise than that before plaintiff can recover, there must be evidence, believed by the jury, of some causative effect, between what the defendant did or did not do and the illness on account of which plaintiff is bringing this action. ▆▆▆ Verdicts cannot be based on mere surmise, speculation, conjecture or guesswork. Mere possibility alone is not sufficient. ▆▆▆ The jury must have some affirmative belief based on evidence that some tortious action of defendant was a proximate cause of the damage complained of. (*Wilbur* v. *Emergency Hospital Assn.,* 27 Cal.App. 751, 759 [3] [151 P. 155]; *Estate of Wallace,* 64 Cal.App. 107, 110 [3] [220 P. 682]; *Strnod* v. *Abadie,* 181 Cal.App.2d 737, 740 [3] [5 Cal.Rptr. 627].)

A reading of all the instructions convinces us that the

jury was fully and fairly instructed, and that all points of law plaintiff requested were amply covered.

When the trial court properly and correctly covers the law, failure to give an additional instruction on the same subject is not error. Neither party is entitled to repetitious instructions. (*Scarano* v. *Schnoor, supra,* 622; *Lemere* v. *Safeway Stores, Inc.,* 102 Cal.App.2d 712, 726 [3-4] [228 P.2d 296].)

We find nothing in any of the authorities cited by appellant contrary to any of the views herein expressed.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.