**Florence Nash McPHEE, Appellant,**

v.

**John REICHEL, Jr., M.D., Appellee.**

**No. 71–1179.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) March 13, 1972.

Decided May 23, 1972.

---

James E. Beasley, Beasley, Hewson & Casey, Philadelphia, Pa., for appellant.

John S. J. Brooks, Brooks, McCartney & Holl, Media, Pa., and John M. Kenney, Philadelphia, Pa., for appellee.

Before MAX ROSENN and JAMES ROSEN, Circuit Judges, and TEITELBAUM, District Judge.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

A jury verdict in a civil case is shown great deference by our judicial system and normally will not be disturbed if it is based on proper instructions and is supported by the evidence. James v. Continental Insurance Co., 424 F.2d 1064, 1065 (3d Cir. 1970); Walsh v. Miehle-Goss Dexter, Inc., 378 F.2d 409, 412 (3d Cir. 1967). Mrs. McPhee, who is appealing from an adverse verdict in a medical malpractice case, does not challenge this principle. Rather, she claims that the judge did not give prop-

er jury instructions and, consequently, she is entitled to a new trial. We agree.

Mrs. McPhee, a resident of Washington, D. C., instituted this suit against Dr. John Reichel, a board certified ophthalmologist.[1] The gravamen of her action was that Dr. Reichel, an eye specialist, had been negligent in diagnosing and treating infections in both of her eyes.[2] After all the evidence had been presented, the district judge instructed the jury on the meaning of negligence:

> Negligence is the doing of something which an ordinarily prudent person would not do under the circumstances. *That doesn't mean because he is a doctor that he is required to use a higher degree * * *.* To put it simply, it is the doing of something which an ordinarily prudent person would not do, or the failure to do something

which an ordinarily prudent person would do.[3]

Shortly thereafter, without saying whether he had changed his thoughts or was merely elaborating, the judge reformulated the duty of care the defendant owed the plaintiff. Instead of using the "ordinarily prudent man" standard, the judge instructed the jury that a general practitioner standard governed:

> The duty imposed on a physician or surgeon is to employ such reasonable skill and diligence as is ordinarily exercised in his profession in the same area where he practices. He is required to give due regard to the state of the profession, that is to say in medical papers and books which relate to his profession. He must conform to acceptable medical standards in his profession.[4]

1. Federal jurisdiction is grounded on the diversity of the parties. 28 U.S.C. § 1332(a).

2. "The Plaintiff's basic charges of negligence were that (a) Dr. Reichel had allowed iris matter to remain incarcerated in the right eye following the operation, thus leading to the infection and sympathetic ophthalmia, and (b) Dr. Reichle failed properly to diagnose the condition of the Plaintiff's right eye in July, 1965, and having missed the diagnosis, failed to enucleate the right eye soon enough to prevent the irreversible spread of the disease to the left eye." (App. Brief P. 3).

3. The complete instructions on this standard were as follows:
    As I said to you members of the jury, the case is based on negligence, and while I ordinarily do this without going into detail, I think in this case I will.
    First of all, members of the jury, the doctor is charged here with negligence. Now, that is a very simple term. Negligence is the doing of something which an ordinarily prudent person would not do under the circumstances. That doesn't mean because he is a doctor that he is required to use a higher degree. He is supposed to use a degree of care which is consistent with his ability and knowledge in the community. Or it can be the failure to do something which equally casts upon him a further degree of knowledge in a situation.

> To put it simply, it is the doing of something which an ordinarily prudent person would not do, or the failure to do something which an ordinarily prudent person would do.

4. The full text of the judge's charge on this point was:
    Now, members of the jury, you heard the term malpractice used here. Frankly, I don't like that term, but it has been brought into the case. In my opinion, if I may paraphrase a few words, there is really nothing such as malpractice, but the law books do say this, and I am going to read it to you.
    The duty imposed on a physician or surgeon is to employ such reasonable skill and diligence as is ordinarily exercised in his profession in the same area where he practices. He is required to give due regard to the state of the profession, that is to say in medical papers and books which relate to his profession. He must conform to acceptable medical standards in his profession.

> That is a legal definition of malpractice. I repeat again, in spite of the fact that I may be criticized for it, I don't like the word malpractice, but that is how it is defined.
    It goes on further to say that the duties imposed by law on physicians are to employ such reasonable skill and diligence as is ordinarily exercised in their profession, giving due regard to

Somewhat later in the charge, the district judge made a reference to a third standard, which the defendant had put forth as the appropriate negligence test. The judge did not, however, explain to the jury whether it was supposed to apply or disregard this standard. These were his comments on this specialist standard:

> Now, as to the defendant, members of the jury, *he states the basic factual issue in this case is as follows:* Considering all of the evidence in this case, did Dr. Reichel, the defendant, in his pre-operative, operative and post-operative care and treatment of his patient use reasonable care under the circumstances, and did he use and apply the skill, judgment and techniques which conformed to the standards of his profession in his specialty in this community, giving due regard to the advanced states of the profession and specialty, at the time that he rendered his services?[5] (Emphasis supplied)

After the judge had completed his charge and the jury had left the court room, the judge conferred with both lawyers to formulate supplemental instructions. During that conference, plaintiff's attorney requested a charge that "where a physician holds himself out as an expert he is required to exercise a higher degree of care and skill in the treatment of a patient."[6] The judge refused to give this instruction on the ground that, "I don't think that is the law."[7] The judge did, however, give a supplemental charge on the standard of care:

> Now, there was some question as to whether my statement of ordinary care might have been confusing. Of course, I am talking about ordinary care in the standard or the status of the person exercising the care. I think what counsel wants me to clarify is that the care that I might exercise or you might exercise might be different than the care that a doctor of Dr. Reichel's profession and standing would exercise. It is the care which *he* would exercise based on his ability, his background and his expertise.[8] (Emphasis supplied)

■■ It is the responsibility of the trial judge to provide the jury with a clear and accurate statement of the law it is expected to apply in reaching its verdict. James v. Continental Insurance Co. *supra.* As long as the instructions "show no tendency to confuse or mislead the jury," an appellate court will presume that the jury's verdict was reached

---

the advanced state of the profession at the time of treatment.

It also says that malpractice consists of negligence or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act. (Tr. 805–6)

5. The complete charge at this stage was:

> Now, members of the jury, I have asked counsel to state to me what they think the basic issues in this case are. You have heard them recently over the past several days and it would take me a long time to repeat them, and perhaps it would be affected by my recollection, but it is my duty to tell you what the basic issue is.
>
> Now, as to the defendant, members of the jury, he states the basic factual issue in this case is as follows: Considering all of the evidence in this case, did Dr. Reichel, the defendant, in his pre-operative, operative and post-operative care and treatment of his patient use reasonable care under the circumstances, and did he use and apply the skill, judgment and techniques which conformed to the, standards of his profession in his specialty in this community, giving due regard to the advanced state of the profession and specialty, at the time that he rendered his services?
>
> Now, in that regard, members of the jury, I think I didn't quite emphasize it, but the standard of care which determines whether or not there was negligence is the standard of care in the area in which we live. * * * (Tr. 807–8)

6. Tr. 814, See also Tr. 820.

7. Tr. 815, See also Tr. 820.

8. Tr. 825–6.

in accordance with the law. Delancey v. Motichek Towing Service, Inc., 427 F.2d 897 (5th Cir. 1970). Here, however, the instructions given by the judge were both confusing and misleading, so we cannot presume that the jury applied the appropriate standard in deciding in favor of Dr. Reichel.

Since Dr. Reichel is an ophthalmologist, the jury should have been instructed to compare his skill and diligence to that which an ophthalmologist would normally employ in like circumstances. The judge's charge did not inform the jury that this was the proper standard. The first part of the charge mistakenly called for an application of the "ordinarily prudent man" test. The jurors were then told to use a general practitioner standard. This instruction was both inaccurate and inconsistent with the first test enunciated by the court. Finally the judge made reference to the specialist standard which the defendant had apparently urged upon the court. This was the appropriate standard, but the judge failed to inform the jury that it was the law.

The supplemental instructions also failed to provide clear guidance for the jury. The judge's reference to the "care that a doctor of Dr. Reichel's profession and standing would exercise" was ambiguous at best. It could have called for evaluation of his conduct in light of the knowledge of a general practitioner or the expertise of a specialist.[9] Furthermore, the judge's subsequent reference to the care "*he* would exercise based on his ability, his background, and his expertise" might have misled the jury to apply a purely personal standard for the defendant. Judging Dr. Reichel against himself would have been totally inappropriate, but the language in the charge invited such an application.

For the guidance of the trial judge upon retrial of this matter, we suggest that the following language be included in the charge:

An ophthalmologist acting within his specialty owes to his patient a higher standard of skill, learning and care than a general practitioner. He is expected to exercise that degree of skill, learning, and care normally possessed and exercised by the average physician who devotes special study and attention to the diagnosis and treatment of eye diseases. Due regard must of course be shown to the advanced state of the profession at the time of the diagnosis or treatment.[10]

This charge conforms with the Pennsylvania practice of alerting the jury to the fact that a defendant who is a specialist should be held to a higher degree of care than a general practitioner. The case law and scholarly comment also support this instruction. Laub's Pennsylvania Trial Guide, Physicians and Surgeons, Chapter 2, § 21, Pp. 258–9.[11]

We do not comment on the appellant's additional arguments because they are moot in view of our holding. Nor do we

9. From the judge's comments at bar, apparently he meant a general practitioner's, but even had he intended a specialist standard, he would have had to express his intent in an unambiguous way for it to have constituted an acceptable jury instruction. See footnote 7 and body of opinion related to it.

10. This suggested charge is not intended to include all of the factors which should be considered by a jury in a malpractice case. It only intends to focus on the degree of care required of a specialist and should be properly supplemented by the trial judge.

11. See also 1939–1940 Op.Atty.Gen. of Pennsylvania 321, p. 325; "Physicians & Surgeons—Standard of Skill and Care Required of Specialist," Ann. 21 ALR3d 953; 61 Am.Jur.2d § 119, p. 244 (1972); Restatement Torts 2d, § 299A, Comment'd.

Cf. Smith v. Yohe, 412 Pa. 94, 194 A.2d 167, p. 170 (1963); Donaldson v. Mafucci, 397 Pa. 548, 156 A.2d 835, p. 838 (1959); Wohlert v. Seibert, 23 Pa. Super. 213, pp. 215, 218 (1903); Hodgson v. Bigelow, 335 Pa. 497, p. 508, 7 A.2d 338 (1939).

pass on the merits of the case: that is a task for a properly instructed jury.

The judgment of the District Court will be vacated and the cause will be remanded to the District Court for a new trial consistent with this opinion.