986 F.2d 1414
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Martha E. MYLES, Administratrix of the Estate of Jennifer
Michelle Edwards, Deceased, Plaintiff-Appellant,
v.
Henry Lucius LAFFITTE, M.D.; Thomas Baker Warren, Jr.,
M.D.; Doctors Laffitte and Warren, P.A.,
Defendants-Appellees.
 No. 91-1821.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: February 16, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Aiken. Charles E. Simons, Jr., Senior District Judge. (CA-87-338-1-6, CA-87-339-1-6)
 Argued: Ellis I. Kahn, Justin Simon Kahn, Solomon, Kahn, Budman & Stricker, Charleston, South Carolina, for Appellant.
 Monteith P. Todd, Nelson, Mullins, Riley & Scarborough, Columbia, South Carolina, for Appellees.
 On Brief: William C. Hubbard, Nelson, Mullins, Riley & Scarborough, Columbia, South Carolina; David A. Brown, Aiken, South Carolina, for Appellees.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 MURNAGHAN, Circuit Judge:
 
 
 1
 Thomas Baker Warren, Jr., M.D., a practitioner of family medicine in Allendale, South Carolina, first diagnosed nine-week-old Jennifer Michelle Edwards as having an upper respiratory infection. The next day, with her condition worsening, he diagnosed gastroenteritis and admitted her to the Allendale County Hospital. She was treated by both Warren and Henry L. Laffitte, M.D., and seemed to respond to treatment for gastroenteritis. Several days later she had a convulsion. Laffitte diagnosed probable meningitis, ordered a spinal tap which verified the diagnosis, and arranged a transfer to a hospital in Charleston. The child died several days later.
 
 
 2
 The administratrix of the child's estate brought an action against Warren and Laffitte in the federal district court in South Carolina after moving to Georgia to establish diversity jurisdiction. Warren and Laffitte moved to dismiss for lack of diversity jurisdiction. The motion was denied, and twice on appeal the denial was affirmed. The case was tried in the United States District Court in Aiken, South Carolina, and the jury returned a verdict for defendants. The plaintiff has appealed.
 
 
 3
 It was, of course, incumbent on the plaintiff to show negligent treatment by one of the doctors. An attempt was made to make such a showing through introduction of Warren's own deposition testimony. At deposition, Warren denied that he had made any error in diagnosing Jennifer Michelle Edwards. The plaintiff's lawyer asked him if, "knowing what you know now, looking back," he thought he had made an error in diagnosis. Warren replied that the baby's condition was good as was the lab work, and only upon discovery that the child had meningitis was it obvious that an error had been made.
 
 
 4
 The district court refused admission of the deposition testimony. The court reasoned that a physician should be judged by what the physician knew at the time of making the diagnosis, not what he knew at a later time (the hindsight rule).
 
 
 5
 The plaintiff also sought unsuccessfully to introduce deposition testimony of Laffitte that he had researched meningitis after the diagnosis. The court refused to permit inquiry about the research, determining that information learned after the spinal tap which verified the meningitis diagnosis was information learned in hindsight, and therefore irrelevant.
 
 
 6
 Finally, the plaintiff sought to show that Warren and Laffitte's treatment of the infant was negligent by introducing testimony as to the appropriate standard of care. Both Warren and Laffitte practiced family medicine in a relatively rural area; both treated infants and children in the normal course of their practices. Plaintiff's only independent expert at trial was Larrie Greenberg, a pediatrician from Washington, D.C. Plaintiff wished to elicit from Greenberg the standard of care to be applied to a medical practitioner who treated infants. Defendants objected that the proffer of Greenberg as a specialist in pediatrics did not qualify him as an expert in family practice, and thus he could not express an opinion in that area. Following voir dire, during which the plaintiff was given the opportunity to qualify Greenberg as an expert in family practice, the district court determined that no foundation for expertise outside of pediatrics had been laid. Greenberg's experience, training, and education in pediatrics did not qualify him as a family physician. Since specialists are held to a higher standard of care than that required of general practitioners, the law would not hold a general practitioner to the same degree of expertise as a pediatric specialist. On that basis, the court refused to allow Greenberg to opine about the standard of care of a family physician, and restricted the scope of Greenberg's testimony to the standard of care that a pediatrician would be held to.
 
 
 7
 Greenberg testified that he believed he was qualified to testify and comment on the care that was delivered to the child and that the steps taken in diagnosing the infant departed from what would be expected of a competent pediatrician. According to Greenberg, there was no difference in the standard of care between pediatricians and family physicians, nor between doctors practicing in rural areas and those in urban centers. Greenberg testified that Warren and Laffitte departed from the standard of care expected of pediatricians in four ways: 1) by not entertaining the possibility of a potential life-threatening infection from the beginning; 2) by not investigating where the infection originated; 3) by not starting treatment immediately; and 4) by not referring the infant to a hospital center with the resources to handle the illness. Greenberg stated that had the defendants not departed from the standard of care, "with reasonable medical certainty, this baby would be alive and well today."
 
 
 8
 During Greenberg's testimony, counsel for the defense objected three times to plaintiff counsel's questioning of Greenberg, and the court stressed its ruling that Greenberg could only be questioned with respect to the proper care by an expert in pediatrics. "You are limited, sir to an expert-what an expert in the field of pediatrics would do ... not what a family practitioner or a family doctor would do." During instructions, the Court noted Dr. Greenberg's expertise in pediatrics in contradistinction to the defendant's family medicine experts. It is no doubt significant that no family medicine expert was produced by the plaintiff.
 
 
 9
 On appeal, plaintiff argued that both Warren and Laffitte practice pediatrics, that there is no practical difference between a family practice doctor and a pediatrician, and that the appropriate standard of care to be applied to them is that of a physician who undertakes to treat an eight-week old infant. Plaintiff also argued that the force and effect of Greenberg's testimony was lost because his comments on the issue of negligence could not be directed to the conduct of Warren and Laffitte. Greenberg should have been allowed more leeway in his testimony, plaintiff contended, because specialization is not crucial to the ability of the expert witness to testify. For support plaintiff cited to a series of cases involving engineers, firemen, and dog handlers. However, the ability of medical specialists to testify as to the standard of care of general practitioners has been considered by South Carolina courts. The consensus is that specialists are held to a different standard of care than that required of general practitioners. See, e.g., Durr v. McElrath, 299 S.C. 30, 382 S.E.2d 20, 22 (Ct. App. 1989) (degree of skill and care a physician must use is that of competent practitioners in the defendant's field of medicine and not that which would be exercised by the profession generally); Steeves v. United States, 294 F. Supp. 446, 453 (D.S.C. 1968) (the degree of skill and care a physician must use in diagnosing a condition is that which would be exercised by competent practitioners in the same specialty under similar circumstances). Courts in other jurisdictions have recognized that, in general, specialists are held to a higher standard of care than are general practitioners. See, e.g., Cross v. Huttenlocher, 185 Conn. 390, 440 A.2d 952 (1981) (testimony by two specialists in pediatric neurology did not establish the standard of care of a general pediatrician); Reeg v. Shaughnessy, 570 F.2d 309 (10th Cir. 1978) (the court refused to require a defendant general practitioner to be judged by a higher standard imposed on an orthopedic surgeon, even though he had performed many orthopedic operations); Smith v. Guthrie, 557 S.W.2d 163 (Tex. Civ. App. 1977) (a plaintiff's expert, an internist and pathologist, was properly excluded from testifying against a defendant general practitioner; general practitioner cannot be held to the standard of care of a specialist); Shilkret v. Annapolis Emergency Hospital Association, 276 Md. 187, 349 A.2d 245 (1975) (under standard of care in medical malpractice, whether physician is specialist or general practitioner is relevant consideration); McPhee v. Reichel, 461 F.2d 947, 950 (3rd Cir. 1972) (jury instruction that ophthalmologist would be held to standard of care of a general practitioner was error; specialist owes higher standard of care than general practitioner).
 
 
 10
 The plaintiff has failed adequately to support its argument that "specialization goes only to the question of weight of the testimony, not competency." Moreover, Greenberg was permitted to testify at length as to his own credentials, his opinion as to the standard of care for pediatricians, and his opinion that the standard for family practice doctors was the same as for pediatricians. The case went to the jury, which then had before it the weighing of Greenberg's testimony as to the correct standard of care, and whether his pediatrician expert status somehow affected its application to general practitioners such as Warren and Laffitte. Again it should be noted that no experts on family practice were called by the plaintiff. Warren and Laffitte, on the contrary, produced a family practice doctor, who testified that their conduct complied with the proper standard of care. Furthermore, the court did not limit its charge to the jury on the standard of care to family practitioners. The charge to the jury repeatedly referred to the standard of care of a physician or doctor, rather than that of a family practice doctor. Accordingly, there was no error in the court's limiting of Greenberg's opinion of the standard of care to what was required of pediatricians, of which he was one, rather than general practitioners.
 
 
 11
 Efforts to secure admission of Warren's testimony barred as hindsight proceeded on appeal on the grounds that the testimony was a) a prior inconsistent statement, Federal Rule of Evidence 801(d)(1)(A); b) an admission under FRE 801(d)(2)(A); and c) testimony of an expert witness. There was, however, no inconsistency between Warren's deposition and trial testimony, and whatever admission there was was irrelevant. The expert nature of the testimony also suffered from the fact that it would depend on evaluation with the benefit of hindsight. See, e.g., East v. United States, 745 F. Supp. 1142, 1149 (D. Md. 1990) ("a doctor's conduct must be viewed in light of the circumstances existing at the time of diagnosis and treatment and not retrospectively.... If a doctor exercised a reasonable degree of care and skill under the circumstances as they existed, though not as seen in perfect hindsight, then the doctor is not liable for malpractice"); Douzart v. Jones, 528 So.2d 602, 603 (La. App. 2d Cir. 1988) ("Neither a general practitioner or a specialist is to be held to a standard of perfection or evaluated with the benefit of hindsight"); Ellis v. United States, 484 F. Supp. 4, 12 (D.S.C. 1978) (finding the United States not liable for a psychiatric patient's daughter's murder, after a physician issued a patient custody pass because"court should not second guess what a physician reasonably determined, based upon later events"); Meeks v. Marx, 15 Wash. App. 571, 578, 550 P.2d 1158, 1163 (1976) (the question of the standard of care is to be determined by reference to what was known at the time of treatment and pertinent facts then in existence); Scarano v. Schnoor, 158 Cal. App. 2d 612, 622, 323 P.2d 178, 184 (1958) (a court properly sustained objections to a question of defendant on whether, on basis of what he knew after one operation, he would have performed the operation because negligence is not to be determined by hindsight or by what a party subsequently learns).
 
 
 12
 Similarly the same conclusion applies to the exclusion of crossexamination of Laffitte on the basis of literature on meningitis he obtained after the diagnosis of the infant. Because Laffitte requested and read such articles after the fact, testimony that he consulted such literature had no relevance to whether he breached the standard of care. In addition, the plaintiff did not make an offer of proof at trial that the research material in fact contained statements inconsistent with Laffitte's testimony, nor did plaintiff lay a foundation as to whether the articles in question were authoritative. The trial court correctly prohibited cross-examination of Laffitte regarding articles that were not the subject of a proper offer of proof, not established as authoritative, and which he received and read after his treatment of the patient.
 
 
 13
 The plaintiff has referred to three different events during trial as constituting asserted error by the district court because of the attitude supposedly communicated to the jury about the plaintiff's case. First, during the opening statements by plaintiff's counsel the district court, sua sponte, interrupted the explanation of the case to ask if counsel for Warren and Laffitte had seen the chart counsel was using. The court stressed to the jury that an attorney does not testify, that an attorney's statement is not evidence, that an attorney is not to express opinions or draw conclusions, and that the chart being used was not evidence.
 
 
 14
 Second, when defendant Laffitte approached the witness stand, plaintiff's counsel stated that the district judge greeted him by using his nickname "Luke," and poured him a glass of water. Counsel for the plaintiff made no objection at the time but he did cite that as an error in the Motion JNOV.
 
 
 15
 Third, the plaintiff charged that during cross-examination of Warren's and Laffitte's expert witness, a family practitioner, the district court impermissibly restricted cross examination and communicated disdain for the plaintiff's case. The plaintiff sought to establish that the standard of care for a family practitioner was uniform throughout the United States. The district court, characterizing such a line of questioning as "too broad," required that plaintiff's counsel lay a foundation by showing that Warren's and Laffitte's expert knew the standard of care for practice throughout the country. The district judge then asked defense if they had reserved objections.
 
 
 16
 Those events, say plaintiff, considered in the context in which they arose, were unfair to the plaintiff's case. The contention was that the timing and manner of the admonition to counsel during opening arguments led the jury to conclude that something improper or tainted was being done or said by plaintiff's counsel. The restrictions on crossexamination insulated Warren's and Laffitte's conduct from legitimate scrutiny. The greeting of a witness by a nickname is "unusual" and "extraordinary," and, though not reversible error by itself, shows the atmosphere of hostility to the plaintiff's case.
 
 
 17
 However, the plaintiff's complaints do not demonstrate a bias or taint such as would constitute reversible error. The district judge made numerous rulings in the plaintiff's favor. He repeatedly instructed the jury that he was impartial. He was within his discretion to interrupt opening statements to prevent the jury from being misled or confused, and properly directed his admonition to all lawyers rather than solely to plaintiff's counsel. The record does not reflect that the district judge ever called Laffitte "Luke," but does reflect that he repeatedly referred to him as Dr. Laffitte or Doctor. Finally, the record reveals that the plaintiff's complaints as to the limitations the district court placed on his cross-examination of the defendants' expert witness as likely proceeded from an uncooperative witness as from any improper action on the part of the district court.
 
 In sum, the judgment is accordingly
 
 18
 AFFIRMED.