**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2773
_____

UNITED STATES OF AMERICA

v.

RUFUS ANTORIUS WILLIAMS,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court Criminal No. 3:19-cr-00804-005)
District Judge: Honorable Zahid N. Quraishi
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 12, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and AMBRO, *Circuit Judges*.

(Filed: May 8, 2025)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*

    After representing himself at a two-phase trial, Appellant Rufus Williams was found

guilty of three drug charges and one charge for unlawful possession of a firearm by a felon

---

   [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does
not constitute binding precedent.

under 18 U.S.C. § 922(g)(1). On appeal, Williams contends that § 922(g) is unconstitutional as applied to him and brings a litany of other challenges to his convictions and sentence. Because each argument put forth by Williams fails, we will affirm Williams' convictions and sentence.

I. **Background**[1]

On September 26, 2019, law enforcement officers executed a search warrant at Williams' home. In the months prior, Williams, a felon, had been captured on a court-ordered wiretap using coded language to arrange for and discuss cocaine deals. Once inside Williams' home, officers discovered a considerable quantity of cocaine and eleven firearms.

On January 30, 2023, a jury convicted Williams of three drug charges and, in a special interrogatory, found that Williams knowingly possessed a firearm in or affecting interstate or foreign commerce. A second phase of Williams' trial followed, at which he was found guilty under § 922(g) for possession of a firearm by a felon.

Williams moved for a judgment of acquittal as to all counts of conviction under Rule 29, which the District Court denied in February 2023. Williams did not seek a renewal of this Rule 29 motion nor did he file an additional Rule 29 motion.

In August 2023—seven months after being convicted—Williams filed two motions to "vacate and dismiss" his convictions. SA2512. As to his § 922(g) conviction, Williams

---

[1] Since we write primarily for parties already familiar with this case, we include only those facts necessary to reach our conclusion.

argued that his conviction should be vacated because the Second Amendment's plain text covers the charged conduct and § 922(g) is unconstitutional as applied to him.

The District Court denied this motion, finding that Williams had not demonstrated good cause for not making this argument in a Rule 12(b)(3) motion before trial and therefore had waived his Second Amendment argument. The District Court went on, however, to address the merits of Williams' argument, finding that Williams' "challenge would not pass the *Bruen* framework" even if it were timely. SA2514. Williams appealed.

## II.   **Discussion**

### A. Williams' Second Amendment Challenge

On appeal, Williams renews his argument raised in the untimely August 2023 motion that § 922(g) is unconstitutional as applied to him, and that "therefore the conviction for violating the 922(g)(1) statute is lawfully unsustainable." Appellant's Br. at 2. Williams contends that he did not waive this challenge, arguing that he "stood trial to demonstrate his non guilt as to the charged offenses and to preserve the right to challenge the applicability and constitutionality of the statute . . . as applied to him." *Id*. at 7. But though Williams stood trial, he never argued that his own Second Amendment rights were violated before August 2023. Williams' only invocations of *Bruen* or the Second Amendment before trial were made in furtherance of his argument that his family members possessed the guns found in his home and had a Second Amendment right to do so.[2]

---

[2] To the extent that Williams attempts to revive this specific argument on appeal, its factual underpinnings—that Williams' family members possessed the guns—were soundly rejected by the jury with ample evidentiary basis.

The Government argues that Williams' Second Amendment argument fails because he did not raise it pre-trial and thereby waived it. The Government argues in the alternative that, if not waived in its entirety, Williams' argument would nevertheless fail under plain error review. We agree—we need not reach the issue of waiver because, even if not waived, Williams' argument would fail regardless.

If not waived, Williams' Second Amendment argument would be subject to plain error review because he failed to make it before the District Court until his untimely motion to vacate his convictions. *See United States v. Desu*, 23 F.4th 224, 230–31 (3d Cir. 2022) ("When a defendant fails to 'lodge a contemporaneous objection' and instead 'raise[s] the issue for the first time in [a] motion for a new trial,' we review the district court's ruling for plain error." (quoting *United States v. Kolodesh*, 787 F.3d 224, 230 n.4 (3d Cir. 2015))).

Williams contends that we must follow *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) and find that § 922(g) is unconstitutional as applied to him. But the plaintiff in *Range* had an entirely different criminal history from Williams': a single conviction for "making a false statement to obtain food stamps," followed by decades of lawfulness punctuated only by "minor traffic and parking infractions and a summary offense for fishing without a license." *Id.* at 223–24. In contrast, Williams has a lengthy criminal history including two convictions for possession of cocaine with intent to distribute, one conviction for possession of marijuana with intent to distribute, and one conviction for child endangerment. This Circuit's holding in *Range* was "a narrow one" that does not compel a similar conclusion here, given Williams' dramatically different criminal record. *Id*. at 232. At the very least, this factual mismatch to *Range* means the District Court did

4

not commit plain error in rejecting Williams' Second Amendment challenge. *See Johnson v. United States*, 520 U.S. 461, 467 (1997) (holding that a plain error must be obvious "under current law").

### B. The Sufficiency of Williams' Conspiracy and Drug Distribution Convictions

Williams next contends that "[t]he government cannot point to any evidence in the record" sustaining the necessary elements of his "conviction for violating section 486" and his "conviction for attempt to distribute, distribution or Section 841(a)(1)." Appellant's Br. at 11–12.

Williams' challenges to the sufficiency of the evidence will fail if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bailey*, 840 F.3d 99, 109 (3d Cir. 2016) (en banc) (emphasis omitted) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424–25 (3d Cir. 2013)). Both challenges fall short of meeting this standard.

A rational trier of fact could have found that Williams knowingly possessed crack and powder cocaine on September 26, 2019 with the intent to distribute the drugs: 124.9 grams of powder cocaine and 39 grams of crack cocaine, packaged for individual distribution in 241 small baggies, were found in Williams' laundry room. Likewise, a rational trier of fact could have found that Williams was party to an agreement, with knowledge of its objective to distribute or possess with intent to distribute cocaine, with at least one other alleged co-conspirator: intercepted calls and texts evidenced a thinly-coded drug conspiracy and Williams' participation within it.

*C. Jury Instructions*

Williams argues that his conviction resulted from the District Court providing "incomplete Jury Instructions" and "refus[ing] to provide Defense Theory Instruction." Appellant's Br. at 12. Williams appears to be referring to the District Court's refusal to include in the jury instructions "a six-page, single-spaced theory of defense that recounts [Williams'] version of the events." Amended Pro Se Appendix at 132. As the District Court noted, Williams' proposed language would have had the Court "instruct the jury that reasons for probable cause were fabricated and drugs were planted . . . that detectives made known false statements of Mr. Williams possessing a firearm . . . and that there is clear evidence that three of the firearms charged in the instant matter were indeed planted[.]" *Id.* (cleaned up).

The District Court's refusal to include this language was not error. "No litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference," *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995), and "a defendant is not entitled to a judicial narrative of his version of the facts, even though such a narrative is, in one sense of the phrase, a theory of the defense[,]" *United States v. Sussman*, 709 F.3d 155, 179 (3d Cir. 2013) (quoting *United States v. Hoffecker*, 530 F.3d 137, 176 (3d Cir. 2008)).

Williams also argues that the "[j]ury instructions [we]re misleading by not reflecting the elements as they stand through this Court," Appellant's Br. at 14, and were "devoid of necessary language setting the element standard or guidance," *id.* at 17. Williams identifies "Instruction No. 13" as the purportedly misleading instruction. *Id.*

Jury Instruction Number 13 concerned conspiracy to distribute and possess with intent to distribute cocaine, and the sole component of this instruction that Williams objected to at trial read as follows:

> Third, that the defendant joined the agreement or conspiracy, knowing of its objectives to distribute or posses[s] with intent to distribute cocaine, and intending to join together with at least one other alleged conspirator to achieve those objectives. That is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives[.]

SA1931–32. Before the District Court, Williams' only objection regarding this instruction was to the language "at least one other alleged conspirator," which Williams wanted removed. SA1471. The District Court overruled Williams' objection, finding that the challenged language "brings better clarity for the jurors of what is required to be proved." *Id*. This was not error: the challenged language, which is included in the Third Circuit Model Criminal Instructions, is a standard and fully accurate instruction. *See* Third Cir. Model Crim. Instr. § 6.21.846B ("and intending to join together with at least one other alleged conspirator"); *see also United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989) ("The government need only prove that the defendant agreed with at least one of the persons named in the indictment that they or one of them would perform an unlawful act.").

Lastly, Williams contends that the jury instructions for the felon-in-possession charge were "incomplete" as they were "devoid of second amendment language[.]" Appellant's Br. at 6. Specifically, Williams objects that the jury instructions contained "absolutely no reference[s] made to Second Amendment or its guaranteeing 'the people' the right to keep and bear arms." *Id*. at 7. Because Williams did not lodge any such objection before the

7

jury began deliberating, we review for plain error.  *See United States v. Nucera*, 67 F.4th 146, 172 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 366 (2023) ("Because Nucera failed to challenge the instructions before deliberations, we review for plain error[.]").

The District Court's decision not to *sua sponte* instruct the jury about the existence of the Second Amendment was clearly not plain error.  There is no obvious requirement for such an instruction "under current law," and the relevance of such an instruction to the jury's fact-finding duties is dubious at best.  *Johnson*, 520 U.S. at 467.

### D.  Admitted Exhibits

Williams also argues that the Government "stripped away [his] ability to defend against particular Government presented transactions" by "mov[ing] to exclude material evidence that had been previously admitted."  Appellant's Br. at 12.  Williams repeatedly refers to this evidence as "Brady Material."  *See id.* at 20.

As an initial matter, *Brady v. Maryland* lends no support to Williams' argument.  373 U.S. 83 (1963).  *Brady* requires that the Government disclose, through discovery, potentially exculpatory evidence to a criminal defendant.  *Id*. at 87 (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment").  It does not impose any obligation that courts deem such material admissible at trial.  Because Williams admits that the evidence at issue in this appeal was "produced (pre-trial)," his argument is purely one of admissibility and does not involve a *Brady* violation.  Appellant's Br. at 20.

8

Williams' admissibility argument appears to primarily concern a number of phone call recordings that were not presented to the jury at trial. The record, however, makes clear that the non-admission of the calls resulted from Williams' own choices.

At trial, Williams sought to "present" a list of "around 600 calls" to the jury, arguing that the rule of completeness required their admission. SA241. The District Court asked Williams to "articulate to the Court why these particular recordings should [b]e included to complete the ones that have been played." SA 242. After Williams consulted with stand-by counsel, he informed the District Court that he would not "be admitting any calls at this time." SA279. Later, Williams complained that he was "no longer allowed to defend [himself]" because the District Court "stripped [him] of the right to use the very phone calls that [it] said [he] could use." SA352. But, as the District Court noted, Williams had "withdraw[n] that request" and had never articulated a basis for the recordings' admission. *Id*. Later, the District Court gave Williams another chance to identify recordings for admission, and he chose to play two recordings in open court and used another for impeachment purposes after failing to identify a basis for its admissibility.

At no point did Williams specifically identify a basis for the admission of the rest of the approximately 600 recordings referenced in his original, withdrawn request for admission. Williams' decision to abandon the admission of these recordings was his own, and the District Court committed no error in permitting him to make that choice.

*E. Admitted Witnesses*

Williams also argues that the District Court "suppressed . . . defense witnesses[']" testimony." Appellant's Br. at 20. But the District Court did not improperly bar any

defense witnesses from testifying. Williams was properly barred from re-calling Sergeant Brandon Smith—who Williams said would testify to his interpretation of phone recordings "as an investigator"—to elicit non-expert witness testimony. SA1741; *see United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016) (a lay witness can only "give her opinion or interpretation of an event when she has some personal knowledge of that incident," and not when such testimony "'amounts to little more than choosing up sides, or that merely tells the jury what result to reach'" (quoting *United States v. Stadtmauer*, 620 F.3d 238, 262 (3d Cir. 2010))). The District Court likewise properly forbade Williams from calling David Schafer and Special Agent Brad Zartman, both of whom Williams called for purposes of giving improper lay witness opinion testimony. And Williams himself chose not to call his son, Prince.

### F. Jury Deliberations

Williams contends that the District Court allowed "[a] non-jury [i]ndividual . . . to be present with [the] [j]ury as they reviewed evidence, deliberated, and formed conclusions." Appellant's Br. at 14. This appears to be a reference to the presence of "one Deputy U.S. Marshal" who was present in the closed courtroom as the jury reviewed the "firearms and narcotics" at issue in the case. The presence of this one officer for this one limited purpose is unremarkable and was not error, and the District Court properly prevented any potential influence on deliberations by instructing the jury not to deliberate while the officer was present.

Williams also alleges that the "[j]ury was presented items to consider during deliberations that were not marked into evidence." Appellant's Br. at 14. This argument

10

appears to be premised on a mistaken belief, espoused by Williams at trial, that there were "two magazines that were attached to the long guns presented to the jury . . . that . . . weren't entered into evidence." SA2321–22. But, as Williams admitted at trial, "the magazines were connected to" the long guns with zip-ties at the time of their admission to evidence and therefore had been properly entered into evidence. SA2322–23.

*G. Sentencing*

Williams contends that the District Court "improperly applied enhancements that are not lawfully sustainable[.]" Appellant's Br. at 23. Specifically, "Williams argues that the [D]istrict [C]ourt improperly sentenced him by applying enhancements that did not and do not apply because the jury did not specify any particular drug amount . . . nor did the jury hold Mr. Williams responsible for a particular firearm." *Id*. Williams notes that "[t]he jury acquitted [him] of the specified drug amounts named" in Counts One and Two, and that "Count Three named no specific drug amount." *Id*. at 24. Williams "relies on this same reasoning regarding the enhancements with regard to the firearms, in-that the jury did not specify which firearm Williams was held responsible for possessing." *Id*. at 25.

Williams' argument concerning drug quantity is irrelevant: because the District Court grouped Williams' counts together pursuant to U.S.S.G. § 3D1.2(c), it was the total adjusted offense level of the firearms count, not any drug count, that controlled the District Court's sentencing guidelines analysis. Accordingly, Williams' sentence was not impacted by any drug quantity determination.

Williams' argument that "the jury did not specify which firearm Williams was held responsible for possessing" fares no better. Appellant's Br. at 25. Such a finding by the

jury was not required to justify the enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(B) that Williams appears to challenge on appeal. At sentencing, "[t]he government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies." *United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014). The "facts relevant to enhancements under an advisory Guidelines regime" do not need to be proved beyond a reasonable doubt and do not need to be determined by a jury. *United States v. Grier*, 475 F.3d 556, 565 (3d Cir. 2007) (en banc). Accordingly, the jury did not have to find a specific number of firearms to justify the application of an enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(B)—this determination was properly made by the District Court itself.

"Our review of the District Court's interpretation of the Sentencing Guidelines is plenary, and we review factual findings for clear error." *United States v. Carter*, 834 F.3d 259, 261 n.3 (3d Cir. 2016). Therefore, we review the District Court's factual determination that Williams' offense involved at least eight firearms for clear error, a low bar that the District Court's decision clears. As the District Court correctly found at sentencing, the evidence presented at trial showed that "[t]here were 11 firearms that were strategically stationed within [Williams'] home," positioned in proximity to Williams' bedroom and the drugs in the laundry room. SA2559. This was ample basis for the District Court to conclude by a preponderance of the evidence that Williams' offense involved at least eight firearms.

## III. Conclusion

For the reasons set forth above, we will affirm Williams' convictions and sentence.